1  **LAW OFFICES OF BUCHSBAUM & HAAG, LLP**
2  BRENT S. BUCHSBAUM, CSBN: 194816
   *brent@buchsbaumhaag.com*
3  LAUREL N. HAAG, CSBN: 211279
   *laurel@buchsbaumhaag.com*
4  100 Oceangate, Suite 1200
5  Long Beach, California 90802
6  Telephone: (562)733-2498; Fax: (562)628-5501

7  Attorneys for Plaintiff, JOSE DIAZ

8

9                    UNITED STATES DISTRICT COURT
10                SOUTHERN DISTRICT OF CALIFORNIA
11

12  JOSE DIAZ, individually, and as a        Case No.: 3:20-cv-01156-WQH-RBB
    representative of other aggrieved
13  employees,                               *The Honorable William Q. Hayes*

14                                           **CLASS ACTION**
              Plaintiff,
15                                           **NOTICE OF MOTION AND MOTION**
       vs.                                   **FOR PRELIMINARY APPROVAL OF**
16                                           **CLASS ACTION SETTLEMENT;**
                                             **MEMORANDUM OF POINTS AND**
17  SOLAR TURBINES, INC., a                  **AUTHORITIES**
    Corporation; and DOES 1 through
18  250, inclusive,
                                             Date:     January 24, 2022
19                                           Time:
              Defendants.                    Ctrm.:    7A
20

21

22

23                                           Action Filed:  04/30/2020
24

25

26

27

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Green

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE THAT ON January 24, 2022,** in the United States District Court for the Southern District of California, Courtroom 7A, before District Judge William Q. Hayes, Plaintiff, Jose Diaz, (Plaintiff) will move for preliminary approval of the proposed Class Settlement with Defendant, Solar Turbines Incorporated, ("Defendant"). This motion is unopposed as based on the Class Action Settlement Agreement ("Agreement") between the parties, which is filed concurrently with this motion.

    The motion will be based on this Notice of Motion and the attached Memorandum of Points and Authorities filed herewith, the Declaration of Brent Buchsbaum, the Declaration of Jose Diaz and attached exhibits, the argument of counsel and upon such other material contained in the file and pleadings of this action.

                                   Respectfully Submitted,

Dated: December 20, 2021      LAW OFFICES OF BUCHSBAUM & HAAG
                                 A Limited Liability Partnership

                                */s/ Brent S. Buchsbaum*

By_____
  Brent S. Buchsbaum, Attorneys for Plaintiff

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………………………….. 2

II.   FACTS AND PROCEDURE…………………………………………  3

      A. Plaintiff Filed a Putative Class Action Alleging Labor Code

          Violations…………………………………………………………… 3

III.  LEGAL CLAIMS…………………………………………………… 4

      A.  Paystub Violations………………………………………………  4

      B. Rounding and Minimum Wages…………………………………10

      C. PAGA Claims………………………………………………………12

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL…………13

      A.  The Settlement is Fair, Adequate and Reasonable…………………  13

          1.  The Strength of the Case……………………………………  14

          2.   Risk, Expense, and Complexity of Further Litigation…………  14

          3.  Risk of Maintaining Class Action Status………………………  14

          4.  Settlement Amount Provides Realistic Value for Claims………..  15

          5.  Discovery Completed and the Status of Proceedings……………  15

          6.  The Experience and Views of Counsel……………………………  15

      B.  The Preliminary Approval Standard is Met…………………………  16

          1.  The Settlement is Within Range of Possible Approval…………..  16

          2.  The Settlement Resulted from Arm's-Length Negotiations…….  16

          3.  The Settlement is Devoid of Obvious Deficiencies..……………  17

V.    THE SETTLEMENT MERITS CERTIFICATION………………………..  19

      A. Rule 23(a)(1) Numerosity is Satisfied………………………………..  19

      B. Rule 23(a)(2) Commonality is Satisfied………………………………  19

      C. Rule 23(a)(3) Typicality is Satisfied…………………………………  19

      D. Rule 23(a)(4) Adequacy is Satisfied………………………………..  19

      E. Rule 23(b)(3) Predominance is Satisfied……………………………  21

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

i

VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS…..21

VII.  CONCLUSION……………………………………………………….. 22

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1

**TABLE OF AUTHORITIES**

2

**Cases:**

3

*Amchem v. Windsor,*
4
    521 U.S. 591, 623 (1991)......................................................................21

5

*Chu v. Wells Fargo Investments, Inc.,*
    2011 WL 672645 at * 1 (N.D. Cal. February 16, 2011................................. 18
6

*Churchill Vill., LLC v. Gen Electric,*
7
    361 F.3d 566, 575 (9th Cir. 2004) .................................................... 21

8

*Culley v. Lincare, Inc.*
9
    (ED Cal. 2017) 236 F. Supp.3d 1184, 1194.……………………………. 9

10

*Eisen v. Carlisle & Jacqueline,*
11
    417 US 156 (1974)............................................................ 21

12

*Fleming v. Covidien, Inc.,*
    2011 WL 7563047............................................................ 13
13

*Gribble v. Cool Transports,*
14
    2008 WL 5281665 *9 (C.D. Cal. December 15, 2008)............................... 16

15

*Hanlon v. Chrysler Corp.,*
16
    150 F.3d 1011, 1020, 1022 (9th Cir. 1998) ..................................... 19, 20, 21

17

*Ikonen v. Hartz Moutain Corp.,*
    122 F.R.D 258, 262 (S.D. Cal. 1988)............................................... 19
18

*In re Bluetooth Headset Prods. Liab. Litig.,*
19
    654 F.3d 935, 942 ................................................................ 18

20

*In re First Capital Holdings Corp.,*
21
    1992 WL 22631 at *2 (C.D. Cal. June 10, 1992)................................16, 17

22

*In re Pacific Enterprises Sec. Litig.,*
23
    47 F.3d 373, 378 (9th Cir. 1995)................................................ 16

24

*In re Portal Software, Inc.,*
    2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017)...................... 14
25

*Lazarin v. Pro Unlimited, Inc.,*
26
    2013 WL 3541217 (N.D Cal. July 11, 2013)....................................18

27

*Leyva v. Medline Indus. Inc.,*
28
    716 F3d 510, 515 (9th Cir. 2013)................................................20

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

*Lopez v. Friant & Associates, LLC*
 25 Cal.App5th, 773…………………………………………………………….8

*National Rural Tele. Coop. v. DIRECTTV, Inc.,*
 221 F.R.D 523, 526 (C.D. Cal. 2004)..................................................... 14

*Price v. Starbucks Corp.,*
 (2016) 192 Cal.App 4th 1136, 1147 (2011) …………………………..12, 13

*Raines v. Coastal Pacific Food Distributors, Inc.*
 (2018) Cal.App 5th 667 ...……………………………………………… 8

*Rodriguez v. West Publishing Corp.,*
 563 F.3d 948, 963 (9th Cir. 2003)........................................................ 13

*Thurman v. Bayshore Transit Management, Inc.,*
 203 Cal.App. 4th 1112, 1135 (2012) .................................................. 13

**Statutes:**

Cal. Labor Code §203·················································································· 11

Cal. Labor Code §226…………………………………………………….. 9

Cal Labor Code §226(a) ……………………………………………..5, 7, 9

Cal Labor Code §226(e)(1)……………………………………………….8

Cal Labor Code §226(e)(2)……………………………………………….7

Cal Labor Code §226(e)(2)(b)……………………………………………7

Cal Labor Code §226.3……………………………………………….....9

Cal Labor Code §22699(e)(2)…………………………………………..13

Cal Labor Code§514……………………………………………………..12

Fed. Rule of Civil Proc.23(e)(2)………………………………………..13

//

//

//

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

**<u>Secondary Authorities:</u>**

Business & Professions Code 17200…………………………………………………….6

Class Actions (4th ed. 2013) at 11:24-25………………………………………… 16

Manual for Complex Litigation (3d ed. 1995) at § 30.41 ......................................... 16

Newberg et al., Newberg on Class Actions (4th ed. 2013) at § 11:24-25 ............ 16

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1               **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**    **INTRODUCTION**

3        Plaintiff seeks preliminary approval of a $1,800,000 class action settlement

4 that provides significant monetary relief for approximately 2,200 Class Members.

5 The key terms of the Stipulation of Class and Representative Action Settlement

6 and Release[1] are as follows:

7

8      (1)    Settlement Class Members:  all individuals who worked for

9              Defendant in California as a non-exempt employee at any time

10              during the period from April 30, 2016 through preliminary approval.

11

12      (2)    A Gross Fund Value of $1,800,000 that includes:

13           (a)    The Net Fund Value (i.e., the Gross Fund Value minus

14                 Attorneys' Fees and Costs, payroll (employee only) taxes, the

15                 Claims Administration Fee, the LWDA Payment, and the Class

16                 Representative Service Award).

17           (b)    $450,000 in Attorneys' Fees and up to $15,000 in actual costs

18                 to Class Counsel.

19           (c)    $21,132 Claims Administration Fee to Claims Administrator,

20                 Simpluris.

21           (d)    $20,000 PAGA payment pursuant to Private Attorneys General

22                 Act (75% of which, or $15,000, goes to the LWDA, and the

23                 remaining 25%, or $5,000, going to the Net Fund).

24           (e)    $10,000 Service Award to the class representative.

25        The Settlement is fair, reasonable, and adequate—and meets the conditions

26 _____

27     [1]    Hereinafter, "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

28

Caterpillar: Confidential Mem

<div style="float:left">

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

</div>

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

for approval under Federal law.  Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Plaintiff Filed a Putative Class Action Alleging Labor Code Violations

On April 30, 2020, Plaintiff filed a class action complaint in the Los Angeles County Superior Court for the following causes of action:  (1) failure to pay all wages, including minimum wages; (2) failure to  pay overtime, including overtime at the proper regular rate; (3) failure to provide require rest break premiums; (4) failure to pay required meal period premiums; (5) failure to pay wages due at termination; (6) failure to provide accurate wage statements; and (7) unfair business practices in violations of B&P Code §17200.  Plaintiff sought to recover back wages, premiums, and civil penalties for Class Members.[2] (Buchsbaum Decl. ¶9).

On June 12, 2020, the Defendant removed the case to Federal Court, and venue was later transferred to this District.   On August 12, 2020, plaintiff filed a First Amended Complaint that included a PAGA cause of action and a request for associated civil penalties.   (Buchsbaum Decl., ¶10).

This proposed settlement came to fruition only after substantial legal research and analysis, extensive investigation, the exchange and analysis of a significant amount of sampling and class data, the hiring of an expert statistician, and extensive arm's-length settlement negotiations at a private mediation with Tripper Ortman, an experienced and well-regarded wage and hour class action mediator. (Buchsbaum Decl., ¶11).

---

[2]    The complaint also includes causes of action for unfair competition (B&P Code § 17200), and enforcement of PAGA (Cal. Lab. Code § 2698 et seq.).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Caterpillar: Confidential Memo

As stated, if the Settlement is approved, Defendant will pay a Common Fund settlement of $1,800,000. After deductions for court-approved incentive payments to the named Plaintiff, settlement administration costs, attorneys' fees and costs, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class members, based on their number of workweeks during the relevant time periods. (Buchsbaum Decl., ¶12).

This settlement provides a substantial recovery on Defendant's alleged wage and hour violations and disputed derivative penalty claims. Based on the litigation risks involved, Plaintiff submits that the proposed settlement is well within the range of reasonableness required for approval. Moreover, the settlement agreement and notice distribution plan are the products of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel. (Buchsbaum Decl., ¶13).

## III.    LEGAL CLAIMS

### A.    Paystub Violations

Plaintiff posited several theories of Class liability against Defendant in support of his alleged claims. We believe the strongest claim had to do with the paystubs Solar Turbines provided to its employees. The irregularities relate to the Defendant's practices of showing how differential rates of pay and associated overtime were shown on the paystubs.   (Buchsbaum Decl., ¶14).

//

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Green

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The shift differentials paid to class members were included in the overtime calculation, but in such an obscure way that it would be difficult for a lay person to figure it out. Moreover, the methodology used to calculate the differential overtime component appears on the paystub and contains inaccurate information, despite arriving at the correct result mathematically. Essentially, artificial constructs regarding the hours worked are used to arrive at the correct result. (Buchsbaum Decl., ¶15).

To be more specific, during the pay period of 1-6 to 1-19 of 2020, plaintiff actually worked at total of 106 hours, which was 80 regular hours and 26 overtime hours. However, the paystub inaccurately states that he worked a **"TOTAL"** of 225 hours. That number is simply wrong. This, in plaintiff's view, was a very straightforward violation of Labor Code §226(a), which provides as follows:

> (a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, **(2) total hours worked by the employee**, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and **(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.** (Buchsbaum Decl., ¶16).

Moreover, that is not where the errors in the paystubs end. If you look at the Night Shift Premium hours for that same pay period, you get a total of 119 hours (80 + 39). Again, it turns out that if you review the records, that number is wrong. The reality is that there were 106 hours of NSP time, and 26 of those were overtime hours. The 39 *hours* listed on the paystub is an artificial construct that is 1.5 times the overtime hours (26 X 1.5 = 39). That is a way of mathematically getting the right answer, but in doing so it is a misrepresentation of the *hours worked on the night shift*, and there is no calculation of the *overtime rate* for the night shift work (.75 cents multiplied by 1.5). Again, in plaintiff's view, these

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

were straightforward violations of Labor Code §226(a), which requires the

following to appear on the paystub:

**(9) all applicable *hourly rates* in effect during the pay period and *the corresponding number of hours worked at each hourly rate* by the employee.**

As a result, there are two significant penalties that could have been imposed

on the Defendant.  The first are "statutory penalties" under Labor Code §226

(e)(1), which provides for $50 for an initial violation per employee and $100 per

employee for each subsequent violation, up to a maximum of $4,000.  The penalty

only applies if there is an "injury."   Labor Code §226(e)(2) describes the "injury"

requirement:

**"An employee is deemed to suffer injury for purposes of this**

**subdivision if the employer fails to provide accurate and complete**

**information as required by any one or more of items (1) to (9), inclusive, of**

**subdivision (a) and the employee cannot promptly and easily determine from**

**the wage statement alone one or more of the following: The amount of the**

**gross wages or net wages paid to the employee during the pay period or any**

**of the other information required to be provided on the itemized wage**

**statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).**

See Labor Code §226(e)(2)(b).

It follows, then, at least from plaintiff's perspective, that plaintiff and other

class members suffered "injury" because it cannot be promptly and easily

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

determined, from looking at the paystub, how many total hours were worked during the pay period (indeed that number is misreported), the number of hours of night shift premium (again, misreported) and the overtime rate for the night shift premium.

Additionally, there are "civil penalties" that can be recovered under PAGA for these alleged paystub violations, and there is not even an "injury" requirement. That is, in ***Lopez v. Friant & Associates, LLC*** (2017) 15 Cal.App. 5th, 773, the Court held as follows:

**"Consistent with the PAGA statutory framework and the plain language and legislative history of section 226(e), we hold a plaintiff seeking civil penalties under PAGA for a violation of section 226(a) does not have to satisfy the "injury" and "knowing and intentional" requirements of section 226(e)(1)."**

Under PAGA, there are potentially two civil penalties at issue. The first is the default penalty of $100 per employee, per pay period for an "initial violation" and $200 per pay period for "subsequent" violations.

Additionally, several courts have determined that in a PAGA action a violation of the paystub requirements results in a civil penalty of $250 per pay period under Labor Code §226.3. Specifically, in ***Raines v. Coastal Pacific Food Distributors, Inc***. (2018) Cal.App.5th 667, the Court held as follows:

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    "Some courts have read section 226.3 to limit civil penalties to only those

2    instances where the employer failed to provide any wage statement or keep

3    records.  We find more persuasive a decision that found section 226.3 sets out a

4    civil penalty for all violations of section 226 (*Culley v. Lincare, Inc*. (ED Cal.

5    2017) 236 F.Supp.3d 1184, 1194.)

6    "Section 226(a) is intended to require employers to provide an adequate

7    wage statement, itemizing the information to be included, to assist the employee in

8    determining whether he or she has been compensated properly.  Section 226.3

9    provides the civil penalty for failure to comply.  In our view, LWDA would not be

10    prohibited from seeking penalties for a grossly inadequate wage statements simply

11    because the employer did provide a statement."

12    The penalties were potentially substantial.  With regard to the statutory

13    penalty under Labor Code §226, the penalty, based on the ratio of pay periods that

14    contained a differential payment, amounts to approximately $1.2 million based on

15    61,476 wage statements in the statutory period. (Buchsbaum Decl., ¶23).

16    The PAGA penalties, which were subject to discretionary reduction, amount

17    to the same amount, though we considered the likelihood of a double recovery on

18    the same violation to be very unlikely given the court's discretion to reduce

19    PAGA penalties.  (Buchsbaum Decl., ¶24).

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## B. Rounding and Minimum Wages

The second biggest exposure risk for the Defendant relates to its rounding practices. The Defendant in most cases does not pay by the minute, but rather rounds to the quarter hour. In some cases, employees are simply paid for their scheduled shift hours, regardless of whether the employee worked for a longer period of time on the clock. (Buchsbaum Decl., ¶25).

Last year, plaintiff requested plaintiff's time punches, and what was provided did not look organic. That is, the punches were always on whole or half numbers. Plaintiff's counsel followed up to obtain the actual punches, and an excel spreadsheet was provided that showed plaintiff's actual time punches. Upon review, it was apparent on only a cursory inspection that the Defendant routinely paid less than reflected in the time records. The only mystery at this point was whether this was some peculiarity with plaintiff or whether it occurred across the board. (Buchsbaum Decl., ¶26).

Our analyst has carefully reviewed the records and concluded the following: The number of employees who were harmed by rounding was 64.8 percent. In contrast, the number of employees helped by the rounding was zero. Indeed, the rounding was not even on the margins in many cases, as the sample revealed that 23.5 percent of the shifts that had underpayments amounted to 16 minutes or more. The underpaid wages due to rounding, if you include regular pay, overtime

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1    and double time, extrapolates out to $7,797,711, with $2,229,672 in interest, for a

2    total of $10,027,383. (Buchsbaum Decl., ¶27).

3        The Defendant, however, countered that its employees routinely clocked in

4    early, prior to actually working, and engaged in recreational activities at the job

5    site or simply relaxed before beginning to work. According to the Defendant, the

6    clock records were not indicative of actual working hours. The Defendant further

7    argued that determining when alleged underpayments occurred would require a

8    case-by-case analysis, which imperiled certification on the issue. As a result, we

9    had to substantially discount the value of the rounding claim. (Buchsbaum Decl.,

10    ¶28).

11    Waiting Time Penalties

12        The waiting time penalties associated with this biased rounding is based on

13    447 former employees during the period between April 30, 2017 and May 7, 2021.

14    The total exposure is $3,772,099, but again that was subject to a good faith

15    defense under Labor Code §203, and determining who was actually underpaid

16    may have required too many individualized inquiries for certification.

17    (Buchsbaum Decl., ¶29).

18    The Meal and Rest Periods

19        The Defendant had generally compliant meal and rest periods policies.

20    Plaintiff's experiences, however, were that meal periods were often scheduled

21    after the end of the 6th hour, despite what was written in the policy. That is borne

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Item

out by an analysis of the records. Specifically, based on the sampling, **49.3 percent of all shifts** have a meal period occurring after the end of the 5th hour. That said, we found no evidence in the sampling that the Defendant paid any meal or rest period premiums. (Buchsbaum Decl., ¶30).

The Defendant countered by indicating that with respect to the majority of the class members there was a collective bargaining agreement that permitted meals to be taken within the first 6 hours, rather than the first 5, and that proving that a meal period was actually missed due to the press of work or some other reason, as opposed to being taken voluntarily late, was not suitable for class treatment due to the need for individualized inquiries. *See* Cal. Lab. Code § 514. There was also a Labor Management Relations Act preemption issue given the CBA's rules regarding meal periods. As a result, though the exposure was approximately $2.5 million, the settlement value of the meal and rest claims was very low. (Buchsbaum Decl., ¶31).

## C.    PAGA CLAIMS

The PAGA claims were derivative of the claims described above, which in our view made it likely that the court would likely substantially reduce the amount of any civil penalty that was already the subject of a statutory violation. There was also the question of whether a court would permit "stacking" of civil penalties that derive from the same underlying wrong, making calculation of a true PAGA exposure very difficult. (Buchsbaum Decl., ¶32).

Defendant also denies liability under PAGA because it contends Plaintiff's underlying claims are meritless. *See, e.g.,* **Price v Starbucks Corp**. (2016) 192

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1  Cal.App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the

2  derivative UCL and PAGA claims also fail."). Defendant further contends that

3  even if liability were established, this Court would utilize its discretion to severely

4  reduce any PAGA penalties awarded. *See* Labor Code §2699(e)(2) (granting

5  courts discretion to award "a lesser amount" than the full penalty "based on the

6  facts and circumstances of the particular case"); *see also **Thurman v. Bayshore***

7  ***Transit Management, Inc***. 203 Cal.App. 4th 1112, 1135 (2012). (Affirming

8  reduction of PAGA penalties); ***Fleming v. Covidien, Inc***. 2011 WL

9  7563047 (reducing PAGA penalties from $2.8 million to $500,000).

10      The gross PAGA penalty exposure, assuming no stacking, was

11  approximately $2 million, but this was subject to significant reduction given the

12  statutory fees already at play for the same violations. (Buchsbaum Decl., ¶33).

13

14  **IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

15      **A.    The Settlement is Fair, Adequate and Reasonable**

16      To receive judicial approval, a proposed **class action** settlement must be

17  "fair, reasonable, and adequate." *See* Fed. Rule of Civil Proc. 23(e)(2). In making

18  this determination, this Court may consider the following factors: (1) the strength

19  of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of

20  further litigation; (3) the risk of maintaining class action status throughout trial;

21  (4) the amount offered in settlement; (5) the extent of discovery completed and the

22  stage of the proceedings; (6) the experience and views of counsel; (7) the presence

23  of a governmental participant; and (8) the reaction of the class members to the

24  proposed settlement (which is to be evaluated at the final approval hearing, after

25  the class members have received notice). *See **Rodriguez v. West Publishing***

26  ***Corp.***, 563 F.3d 948, 963 (9th Cir. 2003) Plaintiff addresses each relevant factor

27  below.

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 1.     The Strength of the Case

Although he steadfastly maintains that his claims are meritorious, Plaintiff acknowledges that Defendant possessed several defenses to both liability and class certification, such that prevailing on either was uncertain.  (See Buchsbaum Decl., ¶23).  As explained earlier in this brief, Defendant presented multiple defenses to each of Plaintiff's underlying claims, both on the merits and with respect to class certification. As a result, Plaintiff's ability to certify and prevail on his claims was far from guaranteed. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.* 221 F.R.D 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports preliminary approval.

### 2.     Risk, Expense, and Complexity of Further Litigation

The parties engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, and also reviewed a substantial number of payroll records, multiple versions of employee handbooks.  (*See* Buchsbaum Decl., ¶24).  Defendant may have filed a Motion for Summary Judgment based on several of the issues. As a result, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and the accompanying expense.  See *In re Portal Software, Inc.* 2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

### 3.     Risk of Maintaining Class Action Status

Plaintiff had not yet filed his motion for class certification when the parties reached the proposed settlement. (Buchsbaum Decl., ¶36). Absent settlement, there was a risk that there would not be a certified class at the time of trial, and

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

that the putative class members would not recover anything. *Id*. As discussed herein, Plaintiff believes there was substantial risk with certifying all of the proposed classes. Thus, this factor also supports preliminary approval.

**4.     Settlement Amount Provides Realistic Value for Claims**

This proposed settlement provides a substantial monetary recovery for Settlement Class members in face of disputed claims. As detailed, Plaintiff believes this settlement represents a good recovery in light of the substantial risks that the key claims were barred by federal preemption or would not be certified.

While the gross exposure was over $13 million, the risk that certification would be denied was substantial, at least with regard to the rounding claims, waiting time penalty claims, and meal and rest claims.  As a result, the $1.8 million settlement takes those risks into consideration and is a reasonable settlement given the risks involved.   (Buchsbaum Decl., ¶38).

**5.     Discovery Completed and the Status of Proceedings**

The parties engaged in a significant amount of investigation, informal class-wide discovery, and analysis prior to reaching the proposed settlement. (*See* Buchsbaum Decl., ¶32). As stated, Defendant provided time and pay records, and provided detailed data regarding total Settlement Class members, pay period information, average hourly rates, and other relevant data for the class. *Id.*.  It was only after this exchange of data and information that the parties participated in a full-day mediation and ultimately reached the proposed settlement by way of a mediated settlement. *Id.* Thus, this factor supports preliminary approval. (Buchsbaum Decl., ¶39).

**6.     The Experience and Views of Counsel**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

BUCHSBAUM & HAAG, LLLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Green MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

litigation." ***In re Pacific Enterprises Sec. Litig.***, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Plaintiff is represented by experienced wage and hour class action counsel

who collectively have more than two decades of wage and

hour class action experience, and who have successfully served as lead counsel in

certifying and settling numerous class actions both in the federal and state courts

of California. (*See* Buchsbaum Decl., ¶¶ 3-7); This factor supports preliminary

approval. *See, e.g.,* ***Gribble v. Cool Transports*** 2008 WL 5281665 *9 (C.D. Cal.

December 15, 2008 ("Great weight is accorded to the recommendation of counsel,

who are most closely acquainted with the facts of the underlying litigation.")

## B.    The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the settlement and direct that

notice be given if the proposed settlement: (1) falls within the range of possible

approval; (2) appears to be the product of serious, informed, and non-collusive

negotiations; and (3) has no obvious deficiencies. *See **Manual for Complex

Litigation*** (3d ed. 1995) at § 30.41; Newberg et al., *Newberg

on **Class Actions*** (4th ed. 2013) at § 11:24-25. These criteria are met here.

### 1. The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real

litigation risks on both merits and certification. Plaintiff submits that the proposed

settlement is within the range of possible approval, such that notice should be

provided to the Settlement Class so that they can consider the settlement. The

Court will have the opportunity to reassess the reasonableness of the settlement

after members of the Settlement Classes have had the opportunity to opt-out or

object.  (Buchsbaum Decl., ¶40).

### 2. The Settlement Resulted from Arm's-Length Negotiations

This proposed settlement is the result of extensive arm's-length negotiations

by counsel and is, therefore, entitled to an initial presumption of fairness. *See **In***

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Item

*re First Capital Holdings Corp.* 1992 WL 22631 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

As discussed above, Plaintiff thoroughly vetted the claims at issue and conducted factual investigation and extensive legal research and analysis. *See* Buchsbaum Decl., ¶41. The parties reached this settlement only after mediating with Tripper Ortman, a well-respected mediator with extensive experience in mediating wage and hour class actions. *Id.* The parties each supplied Mr. Ortman with detailed mediation briefs outlining the strengths and weaknesses of each claim and defense. *Id.* As noted, the parties participated with Mr. Ortman in a full-day mediation guided by his expertise, which reflected what the mediator determined to be the fair settlement value of the case. *Id.* Even after the parties had come to an initial agreement, both sides further negotiated the finer points of the proposed settlement while drafting, revising, and ultimately mutually approving the long-form settlement agreement. *Id.*

### 3. The Settlement is Devoid of Obvious Deficiencies

If the Court preliminarily approves this settlement, Defendant will pay a Common Fund of $1,800,000. Moreover, no Settlement Class member will be required to submit a claim form to receive his or her Settlement payment. The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Common Fund: | $1,800,000 |
| Minus Court-approved attorney's fees: | $450,000 |
| Minus Court-approved costs (up to): | $15,000 |
| Minus Court-approved incentive payment: | $10,000 |
| Minus PAGA payment to LWDA: | $15,000 |
| Minus settlement administration costs: | $21,000 |

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential Material

1  Net Common Fund:                                **$1,289,000**

2      The payments will be made to class members based on their proportionate

3  number of workweeks during the class period.  *See* Settlement, ¶49

4      The average payment to Settlement Class members is estimated at $585.90.

5  Buchsbaum Decl., ¶44. Moreover, this average recovery per class member is on

6  par with, and exceeds, other wage and hour class action settlements involving non-

7  exempt employees alleging similar claims.

8      Settlement Class members who do not opt-out of the Settlement will be

9  bound by the Settlement's terms, and will release the Releasees from all California

10  claims that are alleged in, or that reasonably could have arisen based on the facts

11  alleged in, the Complaint. *See* Settlement, ¶46. The parties have agreed to

12  designate a total $20,000 of the Common Fund for PAGA penalties, seventy-five

13  percent (75%) of which will go to the LWDA, which is appropriate. *See, e.g., Chu*

14  *v. Wells Fargo Investments, Inc.* 2011 WL 672645 at * 1 (N.D. Cal. February 16,

15  2011 (approving PAGA payment of $7,500 to LWDA out of $6.9 million

16  common-fund settlement); *Lazarin v. Pro Unlimited, Inc.* 2013 WL 3541217

17  (N.D Cal. July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of

18  $1.25 million common-fund settlement).

19      The proposed incentive payment to Plaintiff of $10,000 is also reasonable.

20  Plaintiff's Counsel will also file a separate motion for approval of attorney's fees

21  not to exceed $450,000 for all past and future attorney's fees necessary to

22  prosecute, settle, and administer the litigation and this proposed Settlement, and

23  for verified litigation costs not to exceed $15,000. *See In re Bluetooth Headset*

24  *Prods. Liab. Litig.* 654 F.3d 935, 942.  (In the Ninth Circuit, a 25% award is the

25  "benchmark" attorneys' fee award). Because the proposed settlement is devoid of

26  obvious deficiencies, this final factor also supports preliminary approval.

27  (Buchsbaum Decl., ¶46).

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# V.   THE SETTLEMENT MERITS CERTIFICATION

## A.   Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are approximately 2200 current and former non-exempt employees in the proposed Settlement Class. See Settlement at ¶ 16; *see also **Ikonen v. Hartz Moutain Corp**.* 122 F.R.D 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

## B.   Rule 23(a)(2) Commonality Is Satisfied

The Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiff's and the proposed Settlement Class' employment with Defendant, such as Defendant's allegedly improper rounding, unpaid overtime, unpaid minimum wage, paystubs, meal and rest period policies and defects-- all of which Plaintiff contends arise from a common core of facts, as discussed above.  See Jose Diaz Declaration.

## C.   Rule 23(a)(3) Typicality Is Satisfied

According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See **Hanlon v. Chrysler Corp**.* 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims are typical of those held by other non-exempt employees. Plaintiff was employed by Defendant as hourly non-exempt employees during the relevant time periods.  Plaintiff was subject to Defendant's challenged regular rate miscalculations, meal and rest period policies, as well as paystub irregularities. *Id*. Because the Settlement Class consists only of other non-exempt employees, and because Plaintiff's claims stem from Defendant's wage and hour policies and practices, typicality is satisfied.

## D.   Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is also adequate as a class representative under Rule 23(a)(4). To satisfy this requirement, Plaintiff and his counsel must not have conflicts of

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Caterpillar: Confidential

BUCHSBAUM & HAAG, LLLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1    interest with the proposed classes, and must vigorously prosecute the action on

2    behalf of the classes. ***Hanlon, supra***, 150 F.3d at 1020. Here, there is no conflict

3    of interest between Plaintiff and the proposed Settlement Class. As a non-exempt

4    employee, Plaintiff pressed forward claims for unpaid wages, unpaid premium

5    wage, and related penalties resulting from Defendant's allegedly unlawful wage

6    and hour policies and practices on behalf of other non-exempt employees. As

7    detailed above, the proposed settlement reflects a substantial recovery of

8    Settlement Class members' alleged damages. Given the relatively small amounts at

9    issue per employee, Plaintiff asserts that it is unlikely that any class member,

10   especially a current employee, would have pursued these claims against Defendant

11   individually. *See, e.g.,* ***Leyva v. Medline Indus. Inc***. 716 F3d 510, 515 (9th Cir.

12   2013) ("In light of the small size of the putative class members' potential

13   individual monetary recovery, class certification may be the only feasible means

14   for them to adjudicate their claims. Thus, class certification is also the superior

15   method of adjudication."). Finally, Plaintiff's counsel diligently litigated this case,

16   undertook an extensive analysis of the claims and potential damages, and there are

17   no conflicts with the Settlement Class members.[3] As set forth in the concurrently

18   filed declarations of Plaintiff's counsel, Plaintiff's counsel is adequate to represent

19   the proposed Settlement Class given his qualifications, skills, and experience.

20

21

22

23    ───────────

24    [3] Out of an abundance of caution, pursuant to Fed. R. Civ. Proc. Rule 23(e)(3) ("Rule 23(e)(3)"), Plaintiff also discloses here that he settled separate individual claims against Defendant for discrimination for $37,500. However, that settlement agreement was not an "agreement made in connection with the proposal" as stated in Rule 23(e)(3). The parties and mediator Tripper Ortman negotiated the full amount of the class settlement before any discussion or consideration of Plaintiff's separate, individual claims, which were filed in another lawsuit against Defendant. That separate lawsuit did not concern the causes of action in this lawsuit, and that separate lawsuit and the claims therein played no role in the settlement of this action. That separate lawsuit also caused no conflict with the class members, none of whom is alleged to have participated in the alleged discriminatory conduct toward Plaintiff.

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**E.  Rule 23(b)(3) Predominance Is Satisfied**

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See **Amchem v. Windsor***, 521 U.S. 591, 623 (1991). Because Plaintiff seeks certification for settlement purposes, trial manageability need not be considered. Id., at 620. As all Settlement Class members were allegedly deprived of wages due to Defendant's allegedly unlawful regular rate miscalculation, and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See **Hanlon, supra***, 150 F.3d at 1022.  See Buchsbaum Decl., 48-52.

**VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS**

Due process requires that notice be provided by the best reasonable method available. *See **Eisen v. Carlisle & Jacqueline*** 417 US 156 (1974*)*. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See **Churchill Vill., LLC v. Gen Electric***, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiff proposes that the settlement be administered by Simpluris, an experienced class action settlement administrator, who will mail the proposed Notice Packets to the Settlement Class. The proposed Notice Packet advises Settlement Class members of the key terms of the settlement and the uniform 60-day deadline to opt-out, submit a dispute, or file an objection to the settlement; it provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Plaintiff's counsel, and notifies Settlement Class members of the date for the final approval hearing. *See* Proposed Class Notice.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Caterpillar: Confidential MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2 **VII.    CONCLUSION**

3      For the foregoing reasons, Plaintiff respectfully requests that the Court

4 grant preliminary approval of this class, collective, and representative action

5 settlement.

6

7 Dated: December 21, 2021      LAW OFFICES OF BUCHSBAUM & HAAG

8                                  A Limited Liability Partnership

9                                   */s/ Brent S. Buchsbaum*

10

11                          By: _____

                         Brent Buchsbaum, Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Caterpillar: Confidential Settlement