**LAW OFFICES OF BUCHSBAUM & HAAG, LLP**
BRENT S. BUCHSBAUM, CSBN: 194816
*brent@buchsbaumhaag.com*
LAUREL N. HAAG, CSBN: 211279
*laurel@buchsbaumhaag.com*
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: (562)733-2498; Fax: (562)628-5501

Attorneys for Plaintiff, JOSE DIAZ

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DIAZ, individually, and as a representative of other aggrieved employees, <br><br> Plaintiff, <br><br> vs. <br><br> SOLAR TURBINES, INC., a Corporation; and DOES 1 through 250, inclusive, <br><br> Defendants. | Case No.: 3:20-cv-01156-WQH-RBB <br><br> *The Honorable William Q. Hayes* <br><br> **CLASS ACTION** <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:   August 4, 2022 <br> Time:  9:00 a.m. <br> Ctrm.: 14B <br><br> Action Filed:   04/30/2020 |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT ON August 4, 2022,** in the United States District Court for the Southern District of California, Courtroom 14B, before District Judge William Q. Hayes, Plaintiff, Jose Diaz, (Plaintiff) will move for final approval of the proposed Class Settlement with Defendant, Solar Turbines Incorporated, ("Defendant"). This motion is unopposed.

The motion will be based on this Notice of Motion and the attached Memorandum of Points and Authorities filed herewith, the Declaration of Brent Buchsbaum, the Declaration of Jose Diaz, the Declaration of Mary Butler, attached exhibits, the argument of counsel and upon such other material contained in the file and pleadings of this action.

Respectfully Submitted,

Dated: June 29, 2022        LAW OFFICES OF BUCHSBAUM & HAAG
                            A Limited Liability Partnership

By____*/s/ Brent S. Buchsbaum*
Brent S. Buchsbaum, Attorneys for Plaintiff

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION……………………………………………….. 2

3   II.   FACTS AND PROCEDURE…………………………………… 3

4      A. Plaintiff Filed a Putative Class Action Alleging Labor Code

5         Violations……………………………………………………… 3

6   III.   LEGAL CLAIMS……………………………………………….4

7      A.  Paystub Violations……………………………………… 4

8      B. Rounding and Minimum Wages……………………………10

9      C. PAGA Claims……………………………………………12

10  IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL…………13

11      A.  The Settlement is Fair, Adequate and Reasonable…………………...13

12        1. The Strength of the Case………………………………………… 14

13        2.  Risk, Expense, and Complexity of Further Litigation…………...14

14        3. Risk of Maintaining Class Action Status……………………... 14

15        4. Settlement Amount Provides Realistic Value for Claims……….. 15

16        5. Discovery Completed and the Status of Proceedings…………… 15

17        6. The Experience and Views of Counsel…………………………. 16

18      B. The Preliminary Approval Standard is Met………………………… 16

19        1. The Settlement is Within Range of Possible Approval………….. 16

20        2. The Settlement Resulted from Arm's-Length Negotiations……....17

21        3. The Settlement is Devoid of Obvious Deficiencies..…………… 17

22  V.   THE SETTLEMENT MERITS CERTIFICATION……………………. 19

23      A. Rule 23(a)(1) Numerosity is Satisfied……………………………….. 19

24      B. Rule 23(a)(2) Commonality is Satisfied……………………………. 19

25      C. Rule 23(a)(3) Typicality is Satisfied………………………………. 19

26      D. Rule 23(a)(4) Adequacy is Satisfied………………………………. 19

27      E. Rule 23(b)(3) Predominance is Satisfied…………………………… 21

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS…..21

VII.  THE INCENTIVE, ATTORNEY'S FEES AND COSTS ARE

      REASONABLE……………………………………..……………22

VIII.  CONCLUSION……………………………………………………....27

1

2

# <u>TABLE OF AUTHORITIES</u>

3

<u>**Cases:**</u>

4

*Amchem v. Windsor,*

5
521 U.S. 591, 623 (1991)————————————————————21

6

*Chu v. Wells Fargo Investments, Inc.,*

7
2011 WL 672645 at * 1 (N.D. Cal. February 16, 2011————————18

8

*Churchill Vill., LLC v. Gen Electric,*
361 F.3d 566, 575 (9th Cir. 2004) ————————————————21

9

*Culley v. Lincare, Inc.*

10
(ED Cal. 2017) 236 F. Supp.3d 1184, 1194…………………………….. 9

11

*Eisen v. Carlisle & Jacqueline*,

12
417 US 156 (1974)——————————————————————21

13

*Fleming v. Covidien, Inc.,*

14
2011 WL 7563047——————————————————————13

15

*Gribble v. Cool Transports,*
2008 WL 5281665 *9 (C.D. Cal. December 15, 2008)————————16

16

*Hanlon v. Chrysler Corp.,*

17
150 F.3d 1011, 1020, 1022 (9th Cir. 1998) ——————— 19, 20, 21

18

*Ikonen v. Hartz Moutain Corp.,*
122 F.R.D 258, 262 (S.D. Cal. 1988)——————————————19

19

*In re Bluetooth Headset Prods. Liab. Litig.,*

20
654 F.3d 935, 942 ——————————————————————18

21

*In re First Capital Holdings Corp.,*

22
1992 WL 22631 at *2 (C.D. Cal. June 10, 1992) ——————————16, 17

23

*In re Pacific Enterprises Sec. Litig.,*

24
47 F.3d 373, 378 (9th Cir. 1995)————————————————16

25

*In re Portal Software, Inc.,*
2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) ——————— 14

26

27

*Lazarin v. Pro Unlimited, Inc.,*
2013 WL 3541217 (N.D Cal. July 11, 2013)————————————18

28

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

*Leyva v. Medline Indus. Inc.,*
    716 F3d 510, 515 (9th Cir. 2013)⸻20

*Lopez v. Friant & Associates, LLC*
    25 Cal.App5th, 773…………………………………………………….8

*National Rural Tele. Coop. v. DIRECTTV, Inc.,*
    221 F.R.D 523, 526 (C.D. Cal. 2004)⸻ 14

*Price v. Starbucks Corp.,*
    (2016) 192 Cal.App 4th 1136, 1147 (2011) …………………………12, 13

*Raines v. Coastal Pacific Food Distributors, Inc.*
    (2018) Cal.App 5th 667 ...………………………………………… 8

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948, 963 (9th Cir. 2003)⸻ 13

*Thurman v. Bayshore Transit Management, Inc.,*
    203 Cal.App. 4th 1112, 1135 (2012) ⸻ 13

**Statutes:**

Cal. Labor Code §203⸻ 11

Cal. Labor Code §226…………………………………………….. 9

Cal Labor Code §226(a)  …………………………………………5, 7, 9

Cal Labor Code §226(e)(1)…………………………………………8

Cal Labor Code §226(e)(2)…………………………………………7

Cal Labor Code §226(e)(2)(b)…………………………………………7

Cal Labor Code §226.3…………………………………………....9

Cal Labor Code §22699(e)(2)…………………………………………13

Cal Labor Code§514…………………………………………12

Fed. Rule of Civil Proc.23(e)(2)…………………………………………13

//

//

1    //

2    **<u>Secondary Authorities:</u>**

3    Business & Professions Code 17200……………………………………………………….6

4    Class Actions (4th ed. 2013) at 11:24-25……………………………………… 16

5    Manual for Complex Litigation (3d ed. 1995) at § 30.41 ———————— 16

6    Newberg et al., Newberg on Class Actions (4th ed. 2013) at § 11:24-25 ——— 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHSBAUM & HAAG, LLP
100 OEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff seeks final approval of a $1,800,000 class action settlement that provides significant monetary relief for 2272 Class Members.  The key terms of the Stipulation of Class and Representative Action Settlement and Release[1] are as follows:

(1)    Settlement Class Members:  all individuals who worked for Defendant in California as a non-exempt employee at any time during the period from April 30, 2016 through preliminary approval (February 3, 2022).

(2)    A Gross Fund Value of $1,800,000 that includes:

(a)    The Net Fund Value (i.e., the Gross Fund Value minus Attorneys' Fees and Costs, payroll (employee only) taxes, the Claims Administration Fee, the LWDA Payment, and the Class Representative Service Award).

(b)    $450,000 in Attorneys' Fees and $13,953 in actual costs to Class Counsel.

(c)    $21,359 Claims Administration Fee to Claims Administrator, Simpluris.

(d)    $20,000 PAGA payment pursuant to Private Attorneys General Act (75% of which, or $15,000, goes to the LWDA, and the remaining 25%, or $5,000, going to the Net Fund).

(e)    $10,000 Service Award to the class representative.

---

[1]    Hereinafter, "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Following notice to the class, there were zero objections to the settlement and only 4 opt outs out of 2276 class members, which is strong evidence that the settlement was well received and fair.  The notice was also highly effective, with only 22 undeliverable after skip tracing efforts by the claim administrator.  See Butler Decl., at ¶9-11.

The Settlement is fair, reasonable, and adequate—and meets the conditions for approval under Federal law.  Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement Agreement.

## II.     FACTS AND PROCEDURE

### A.     Plaintiff Filed a Putative Class Action Alleging Labor Code Violations

On April 30, 2020, Plaintiff filed a class action complaint in the Los Angeles County Superior Court for the following causes of action:  (1) failure to pay all wages, including minimum wages; (2) failure to  pay overtime, including overtime at the proper regular rate; (3) failure to provide require rest break premiums; (4) failure to pay required meal period premiums; (5) failure to pay wages due at termination; (6) failure to provide accurate wage statements; and (7) unfair business practices in violations of B&P Code §17200.  Plaintiff sought to recover back wages, premiums, and civil penalties for Class Members.[2] (Buchsbaum Decl. ¶9).

On June 12, 2020, the Defendant removed the case to Federal Court, and venue was later transferred to this District.   On August 12, 2020, plaintiff filed a First Amended Complaint that included a PAGA cause of action and a request for associated civil penalties.   (Buchsbaum Decl., ¶10).

---

[2]     The complaint also includes causes of action for unfair competition (B&P Code § 17200), and enforcement of PAGA (Cal. Lab. Code § 2698 et seq.).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This proposed settlement came to fruition only after substantial legal research and analysis, extensive investigation, the exchange and analysis of a significant amount of sampling and class data, the hiring of an expert statistician, and extensive arm's-length settlement negotiations at a private mediation with Tripper Ortman, an experienced and well-regarded wage and hour class action mediator. (Buchsbaum Decl., ¶11).

As stated, if the Settlement is approved, Defendant will pay a Common Fund settlement of $1,800,000. After deductions for court-approved incentive payments to the named Plaintiff, settlement administration costs, attorneys' fees and costs, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class members, based on their number of workweeks during the relevant time periods. (Buchsbaum Decl., ¶12).

This settlement provides a substantial recovery on Defendant's alleged wage and hour violations and disputed derivative penalty claims. Based on the litigation risks involved, Plaintiff submits that the proposed settlement is well within the range of reasonableness required for approval. Moreover, the settlement agreement and notice distribution plan were the products of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel. (Buchsbaum Decl., ¶13).

## III.   LEGAL CLAIMS

### A.   Paystub Violations

Plaintiff posited several theories of Class liability against Defendant in support of his alleged claims.  We believe the strongest claim had to do with the

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

paystubs Solar Turbines provided to its employees.  The irregularities relate to the Defendant's practices of showing how differential rates of pay and associated overtime were shown on the paystubs.   (Buchsbaum Decl., ¶14).

The shift differentials paid to class members were included in the overtime calculation, but in such an obscure way that it would be difficult for a lay person to figure it out.  Moreover, the methodology used to calculate the differential overtime component appears on the paystub and contains inaccurate information, despite arriving at the correct result mathematically.  Essentially, artificial constructs regarding the hours worked are used to arrive at the correct result. (Buchsbaum Decl., ¶15).

To be more specific, during the pay period of 1-6 to 1-19 of 2020, plaintiff actually worked at total of 106 hours, which was 80 regular hours and 26 overtime hours.  However, the paystub inaccurately states that he worked a **"TOTAL"** of 225 hours.   That number is simply wrong. This, in plaintiff's view, was a very straightforward violation of Labor Code §226(a), which provides as follows:

(a)     An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, **(2) total hours worked by the employee**, except as provided in subdivision (j), (3)

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in <u>subdivision (b) of Section 1682</u>, the name and address of the legal entity that secured the services of the employer, and **(9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.** (Buchsbaum Decl., ¶16).

Moreover, that is not where the errors in the paystubs end. If you look at the Night Shift Premium hours for that same pay period, you get a total of 119 hours (80 + 39). Again, it turns out that if you review the records, that number is wrong. The reality is that there were 106 hours of NSP time, and 26 of those were overtime hours. The 39 *hours* listed on the paystub is an artificial construct that is 1.5 times the overtime hours (26 X 1.5 = 39). That is a way of mathematically

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

getting the right answer, but in doing so it is a misrepresentation of the *hours worked on the night shift*, and there is no calculation of the *overtime rate* for the night shift work (.75 cents multiplied by 1.5). Again, in plaintiff's view, these were straightforward violations of Labor Code §226(a), which requires the following to appear on the paystub:

**(9) all applicable *hourly rates* in effect during the pay period and *the corresponding number of hours worked at each hourly rate* by the employee.**

As a result, there are two significant penalties that could have been imposed on the Defendant. The first are "statutory penalties" under Labor Code §226 (e)(1), which provides for $50 for an initial violation per employee and $100 per employee for each subsequent violation, up to a maximum of $4,000. The penalty only applies if there is an "injury." Labor Code §226(e)(2) describes the "injury" requirement:

**"An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following: The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).**

See <u>Labor Code</u> §226(e)(2)(b).

It follows, then, at least from plaintiff's perspective, that plaintiff and other class members suffered "injury" because it cannot be promptly and easily determined, from looking at the paystub, how many total hours were worked during the pay period (indeed that number is misreported), the number of hours of night shift premium (again, misreported) and the overtime rate for the night shift premium.

Additionally, there are "civil penalties" that can be recovered under PAGA for these alleged paystub violations, and there is not even an "injury" requirement. That is, in ***Lopez v. Friant & Associates, LLC*** (2017) 15 Cal.App. 5th, 773, the Court held as follows:

**"Consistent with the PAGA statutory framework and the plain language and legislative history of section 226(e), we hold a plaintiff seeking civil penalties under PAGA for a violation of section 226(a) does not have to satisfy the "injury" and "knowing and intentional" requirements of section 226(e)(1)."**

Under PAGA, there are potentially two civil penalties at issue. The first is the default penalty of $100 per employee, per pay period for an "initial violation" and $200 per pay period for "subsequent" violations.

Additionally, several courts have determined that in a PAGA action a violation of the paystub requirements results in a civil penalty of $250 per pay

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

period under Labor Code §226.3.  Specifically, in ***Raines v. Coastal Pacific Food Distributors, Inc***. (2018) Cal.App.5th 667, the Court held as follows:

"Some courts have read section 226.3 to limit civil penalties to only those instances where the employer failed to provide any wage statement or keep records.  We find more persuasive a decision that found section 226.3 sets out a civil penalty for all violations of section 226 (***Culley v. Lincare, Inc***. (ED Cal. 2017) 236 F.Supp.3d 1184, 1194.)

"Section 226(a) is intended to require employers to provide an adequate wage statement, itemizing the information to be included, to assist the employee in determining whether he or she has been compensated properly.  Section 226.3 provides the civil penalty for failure to comply.  In our view, LWDA would not be prohibited from seeking penalties for a grossly inadequate wage statements simply because the employer did provide a statement."

The penalties were potentially substantial.  With regard to the statutory penalty under Labor Code §226, the penalty, based on the ratio of pay periods that contained a differential payment, amounts to approximately $1.2 million based on 61,476 wage statements in the statutory period. (Buchsbaum Decl., ¶23).

The PAGA penalties, which were subject to discretionary reduction, amount to the same amount, though we considered the likelihood of a double recovery on the same violation to be very unlikely given the court's discretion to reduce PAGA penalties.  (Buchsbaum Decl., ¶24).

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

## B.     Rounding and Minimum Wages

The second biggest exposure risk for the Defendant relates to its rounding practices.  The Defendant in most cases does not pay by the minute, but rather rounds to the quarter hour.  In some cases, employees are simply paid for their scheduled shift hours, regardless of whether the employee worked for a longer period of time on the clock. (Buchsbaum Decl., ¶25).

Last year, plaintiff requested plaintiff's time punches, and what was provided did not look organic.  That is, the punches were always on whole or half numbers.  Plaintiff's counsel followed up to obtain the actual punches, and an excel spreadsheet was provided that showed plaintiff's actual time punches.  Upon review, it was apparent on only a cursory inspection that the Defendant routinely paid less than reflected in the time records.  The only mystery at this point was whether this was some peculiarity with plaintiff or whether it occurred across the board.  (Buchsbaum Decl., ¶26).

Our analyst has carefully reviewed the records and concluded the following: The number of employees who were harmed by rounding was 64.8 percent.  In contrast, the number of employees helped by the rounding was zero.  Indeed, the rounding was not even on the margins in many cases, as the sample revealed that 23.5 percent of the shifts that had underpayments amounted to 16 minutes or more.  The underpaid wages due to rounding, if you include regular pay, overtime

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and double time, extrapolates out to $7,797,711, with $2,229,672 in interest, for a total of $10,027,383.  (Buchsbaum Decl., ¶27).

The Defendant, however, countered that its employees routinely clocked in early, prior to actually working, and engaged in recreational activities at the job site or simply relaxed before beginning to work.  According to the Defendant, the clock records were not indicative of actual working hours.  The Defendant further argued that determining when alleged underpayments occurred would require a case-by-case analysis, which imperiled certification on the issue.  As a result, we had to substantially discount the value of the rounding claim.   (Buchsbaum Decl., ¶28).

Waiting Time Penalties

The waiting time penalties associated with this biased rounding is based on 447 former employees during the period between April 30, 2017 and May 7, 2021. The total exposure is $3,772,099, but again that was subject to a good faith defense under Labor Code §203, and determining who was actually underpaid may have required too many individualized inquiries for certification. (Buchsbaum Decl., ¶29).

The Meal and Rest Periods

The Defendant had generally compliant meal and rest periods policies. Plaintiff's experiences, however, were that meal periods were often scheduled after the end of the 6th hour, despite what was written in the policy.   That is borne

out by an analysis of the records.  Specifically, based on the sampling, **49.3 percent of all shifts** have a meal period occurring after the end of the 5th hour. That said, we found no evidence in the sampling that the Defendant paid any meal or rest period premiums.  (Buchsbaum Decl., ¶30).

The Defendant countered by indicating that with respect to the majority of the class members there was a collective bargaining agreement that permitted meals to be taken within the first 6 hours, rather than the first 5, and that proving that a meal period was actually missed due to the press of work or some other reason, as opposed to being taken voluntarily late, was not suitable for class treatment due to the need for individualized inquiries.  *See* Cal. Lab. Code § 514. There was also a Labor Management Relations Act preemption issue given the CBA's rules regarding meal periods.  As a result, though the exposure was approximately $2.5 million, the settlement value of the meal and rest claims was very low. (Buchsbaum Decl., ¶31).

## C.    PAGA CLAIMS

The PAGA claims were derivative of the claims described above, which in our view made it likely that the court would likely substantially reduce the amount of any civil penalty that was already the subject of a statutory violation.   There was also the question of whether a court would permit "stacking" of civil penalties that derive from the same underlying wrong, making calculation of a true PAGA exposure very difficult.  (Buchsbaum Decl., ¶32).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Defendant also denies liability under PAGA because it contends Plaintiff's underlying claims are meritless. *See, e.g., **Price v Starbucks Corp**.* (2016) 192 Cal.App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Defendant further contends that even if liability were established, this Court would utilize its discretion to severely reduce any PAGA penalties awarded. *See* Labor Code §2699(e)(2) (granting courts discretion to award "a lesser amount" than the full penalty "based on the facts and circumstances of the particular case"); *see also **Thurman v. Bayshore Transit Management, Inc**.* 203 Cal.App. 4th 1112, 1135 (2012).  (Affirming reduction of PAGA penalties); ***Fleming v. Covidien, Inc***. 2011 WL 7563047 (reducing PAGA penalties from $2.8 million to $500,000).

The gross PAGA penalty exposure, assuming no stacking, was approximately $2 million, but this was subject to significant reduction given the statutory fees already at play for the same violations. (Buchsbaum Decl., ¶33).

## IV.   THE SETTLEMENT MERITS FINAL APPROVAL

### A.   The Settlement is Fair, Adequate and Reasonable

To receive judicial approval, a proposed **class action** settlement must be "fair, reasonable, and adequate." *See* Fed. Rule of Civil Proc. 23(e)(2). In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement (which is to be evaluated at the final approval hearing, after the class members have received notice). *See **Rodriguez v. West Publishing***

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

*Corp.,* 563 F.3d 948, 963 (9th Cir. 2003) Plaintiff addresses each relevant factor below.

### 1.   The Strength of the Case

Although he steadfastly maintains that his claims are meritorious, Plaintiff acknowledges that Defendant possessed several defenses to both liability and class certification, such that prevailing on either was uncertain.  (See Buchsbaum Decl., ¶23).  As explained earlier in this brief, Defendant presented multiple defenses to each of Plaintiff's underlying claims, both on the merits and with respect to class certification. As a result, Plaintiff's ability to certify and prevail on his claims was far from guaranteed. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.* 221 F.R.D 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports final  approval.

### 2.   Risk, Expense, and Complexity of Further Litigation

The parties engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, and also reviewed a substantial number of payroll records, multiple versions of employee handbooks.  (*See* Buchsbaum Decl., ¶24).  Defendant may have filed a Motion for Summary Judgment based on several of the issues. As a result, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and the accompanying expense.  See *In re Portal Software, Inc.* 2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors final approval.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

### 3. Risk of Maintaining Class Action Status

Plaintiff had not yet filed his motion for class certification when the parties reached the proposed settlement. (Buchsbaum Decl., ¶36). Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the putative class members would not recover anything. *Id*. As discussed herein, Plaintiff believes there was substantial risk with certifying all of the proposed classes. Thus, this factor also supports final approval.

### 4. Settlement Amount Provides Realistic Value for Claims

This proposed settlement provides a substantial monetary recovery for Settlement Class members in face of disputed claims. As detailed, Plaintiff believes this settlement represents a good recovery in light of the substantial risks that the key claims were barred by federal preemption or would not be certified.

While the gross exposure was over $13 million, the risk that certification would be denied was substantial, at least with regard to the rounding claims, waiting time penalty claims, and meal and rest claims.  As a result, the $1.8 million settlement takes those risks into consideration and is a reasonable settlement given the risks involved.   (Buchsbaum Decl., ¶38).

### 5. Discovery Completed and the Status of Proceedings

The parties engaged in a significant amount of investigation, informal class-wide discovery, and analysis prior to reaching the proposed settlement. (*See* Buchsbaum Decl., ¶32). As stated, Defendant provided time and pay records, and provided detailed data regarding total Settlement Class members, pay period information, average hourly rates, and other relevant data for the class. *Id.*.  It was only after this exchange of data and information that the parties participated in a full-day mediation and ultimately reached the proposed

settlement by way of a mediated settlement. *Id.* Thus, this factor supports final
approval. (Buchsbaum Decl., ¶39).

### 6.   The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts
to produce a settlement that fairly reflects each party's expected outcome in
litigation." *In re Pacific Enterprises Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995).
Here, Plaintiff is represented by experienced wage and hour class action counsel
who collectively have more than two decades of wage and
hour class action experience, and who have successfully served as lead counsel in
certifying and settling numerous class actions both in the federal and state courts
of California. (*See* Buchsbaum Decl., ¶¶ 3-7); This factor supports final
approval. *See, e.g., Gribble v. Cool Transports* 2008 WL 5281665 *9 (C.D. Cal.
December 15, 2008 ("Great weight is accorded to the recommendation of counsel,
who are most closely acquainted with the facts of the underlying litigation.")

### B.   The Final Approval Standard Is Met

The Court can grant preliminary approval of the settlement and direct that
notice be given if the proposed settlement: (1) falls within the range of possible
approval; (2) appears to be the product of serious, informed, and non-collusive
negotiations; and (3) has no obvious deficiencies. *See Manual for Complex
Litigation* (3d ed. 1995) at § 30.41; Newberg et al., *Newberg
on Class Actions* (4th ed. 2013) at § 11:24-25. The Court has already granted
preliminary approval on February 3, 2022.

### 1. The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real
litigation risks on both merits and certification. Plaintiff submits that the proposed
settlement is within the range of reasonableness, as indicated by the preliminary

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

approval of the settlement and the positive response of the Class.    (Buchsbaum Decl., ¶40).

## 2. The Settlement Resulted from Arm's-Length Negotiations

This proposed settlement is the result of extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp*. 1992 WL 22631 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

As discussed above, Plaintiff thoroughly vetted the claims at issue and conducted factual investigation and extensive legal research and analysis. *See* Buchsbaum Decl., ¶41. The parties reached this settlement only after mediating with Tripper Ortman, a well-respected mediator with extensive experience in mediating wage and hour class actions. *Id*. The parties each supplied Mr. Ortman with detailed mediation briefs outlining the strengths and weaknesses of each claim and defense. *Id*. As noted, the parties participated with Mr. Ortman in a full-day mediation guided by his expertise, which reflected what the mediator determined to be the fair settlement value of the case. *Id*. Even after the parties had come to an initial agreement, both sides further negotiated the finer points of the proposed settlement while drafting, revising, and ultimately mutually approving the long-form settlement agreement. *Id*.

## 3. The Settlement is Devoid of Obvious Deficiencies

If the Court grants final approval of this settlement, Defendant will pay a Common Fund of $1,800,000. Moreover, no Settlement Class member will be required to submit a claim form to receive his or her Settlement payment, and

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

there is no reversion. The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Common Fund: | $1,800,000 |
| Minus Court-approved attorney's fees: | $450,000 |
| Minus Court-approved costs (up to): | $13,953 |
| Minus Court-approved incentive payment: | $10,000 |
| Minus PAGA payment to LWDA: | $15,000 |
| Minus settlement administration costs: | $21,359 |
| Net Common Fund: | **$1,289,688** |

The payments will be made to class members based on their proportionate number of workweeks during the class period.   *See* Settlement, ¶49

The average payment to Settlement Class members is estimated at $566.19. The highest is $1098.75.  See Butler Decl., ¶12. Moreover, this average recovery per class member is on par with, and exceeds, other wage and hour class action settlements involving non-exempt employees alleging similar claims.

Settlement Class members who do not opt-out of the Settlement will be bound by the Settlement's terms, and will release the Releasees from all California claims that are alleged in, or that reasonably could have arisen based on the facts alleged in, the Complaint. *See* Settlement, ¶46. The parties have agreed to designate a total $20,000 of the Common Fund for PAGA penalties, seventy-five percent (75%) of which will go to the LWDA, which is appropriate. *See, e.g., Chu v. Wells Fargo Investments, Inc*. 2011 WL 672645 at * 1 (N.D. Cal. February 16, 2011 (approving PAGA payment of $7,500 to LWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc*. 2013 WL 3541217 (N.D Cal. July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million common-fund settlement).

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The proposed incentive payment to Plaintiff of $10,000 is also reasonable. Plaintiff's Counsel has filed a separate motion for approval of attorney's fees not to exceed $450,000 for all past and future attorney's fees necessary to prosecute, settle, and administer the litigation and this proposed Settlement, and for verified litigation costs of $13,953. *See In re Bluetooth Headset Prods. Liab. Litig.* 654 F.3d 935, 942.  (In the Ninth Circuit, a 25% award is the "benchmark" attorneys' fee award). Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports final approval. (Buchsbaum Decl., ¶46).

## V.    THE SETTLEMENT MERITS CERTIFICATION

### A.   Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are 2272 current and former non-exempt employees in the proposed Settlement Class. See Settlement at ¶ 16; *see also Ikonen v. Hartz Moutain Corp*. 122 F.R.D 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

### B.   Rule 23(a)(2) Commonality Is Satisfied

The Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiff's and the proposed Settlement Class' employment with Defendant, such as Defendant's allegedly improper rounding, unpaid overtime, unpaid minimum wage, paystubs, meal and rest period policies and defects-- all of which Plaintiff contends arise from a common core of facts, as discussed above.  See Jose Diaz Declaration.

### C.   Rule 23(a)(3) Typicality Is Satisfied

According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims are typical of those held by other non-exempt employees. Plaintiff was employed by Defendant as hourly non-

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

exempt employees during the relevant time periods.  Plaintiff was subject to
Defendant's challenged regular rate miscalculations, meal and rest period policies,
as well as paystub irregularities. *Id*. Because the Settlement Class consists only of
other non-exempt employees, and because Plaintiff's claims stem from
Defendant's wage and hour policies and practices, typicality is satisfied.

### D.  Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is also adequate as a class representative under Rule 23(a)(4). To
satisfy this requirement, Plaintiff and his counsel must not have conflicts of
interest with the proposed classes, and must vigorously prosecute the action on
behalf of the classes. ***Hanlon, supra***, 150 F.3d at 1020. Here, there is no conflict
of interest between Plaintiff and the proposed Settlement Class. As a non-exempt
employee, Plaintiff pressed forward claims for unpaid wages, unpaid premium
wage, and related penalties resulting from Defendant's allegedly unlawful wage
and hour policies and practices on behalf of other non-exempt employees. As
detailed above, the proposed settlement reflects a substantial recovery of
Settlement Class members' alleged damages. Given the relatively small amounts at
issue per employee, Plaintiff asserts that it is unlikely that any class member,
especially a current employee, would have pursued these claims against Defendant
individually. *See, e.g.,* ***Leyva v. Medline Indus. Inc***. 716 F3d 510, 515 (9th Cir.
2013) ("In light of the small size of the putative class members' potential
individual monetary recovery, class certification may be the only feasible means
for them to adjudicate their claims. Thus, class certification is also the superior
method of adjudication."). Finally, Plaintiff's counsel diligently litigated this case,
undertook an extensive analysis of the claims and potential damages, and there are
no conflicts with the Settlement Class members.[3] As set forth in the concurrently

---

[3] Out of an abundance of caution, pursuant to Fed. R. Civ. Proc. Rule 23(e)(3) ("Rule
23(e)(3)"), Plaintiff also discloses here that he settled separate individual claims against
Defendant for discrimination for $37,500.  However, that settlement agreement was not an

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

filed declarations of Plaintiff's counsel, Plaintiff's counsel is adequate to represent the proposed Settlement Class given his qualifications, skills, and experience.

### E.   Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1991). Because Plaintiff seeks certification for settlement purposes, trial manageability need not be considered. Id., at 620. As all Settlement Class members were allegedly deprived of wages due to Defendant's allegedly unlawful regular rate miscalculation, and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon, supra*, 150 F.3d at 1022.  See Buchsbaum Decl., 48-52.

## VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline* 417 US 156 (1974*)*. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Vill., LLC v. Gen Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

A toll-free telephone number was included in the Class Notice for the

---

"agreement made in connection with the proposal" as stated in Rule 23(e)(3).  The parties and mediator Tripper Ortman negotiated the full amount of the class settlement before any discussion or consideration of Plaintiff's separate, individual claims, which were filed in another lawsuit against Defendant.  That separate lawsuit did not concern the causes of action in this lawsuit, and that separate lawsuit and the claims therein played no role in the settlement of this action.  That separate lawsuit also caused no conflict with the class members, none of whom is alleged to have participated in the alleged discriminatory conduct toward Plaintiff.

purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement.  The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process.  Callers have the option to speak with a live call center representative during normal business hours or to leave a message and receive a return call during non-business hours.  The toll-free telephone number included in the Class Notice was 1-888-226-9511.

## NOTIFICATION TO THE CLASS

On February 18, 2022, Simpluris received the Court-approved Notice Packet from Plaintiffs' Counsel.  The Notice Packet advised Class Members of their right to opt out from the Settlement, dispute employment information, object to the Settlement, or do nothing, and the implications of each such action. The Notice Packet advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. Butler Decl., at ¶5. A true and correct copy of an exemplar Notice is attached to the Butler Declaration.

On March 16, 2022, Counsel for Defendant provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and pertinent employment information during the Class Period for the Class Members.   The Class List contained data for 2,276 unique Class Members. Butler Decl., at ¶6.

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. Butler Decl.,

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

at ¶7.

On April 13, 2022, after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 2,276 Class Members contained in the Class List. Butler Decl., at ¶8.

As of this date, 142 Notice Packets were returned by the post office. For those without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis.  Simpluris used the Class Member's name, previous address and Social Security number to locate a more current address. One hundred twenty (120) Notice Packets were re-mailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Member. Ultimately, after additional searches, 22 Notice Packets were undeliverable because Simpluris was unable to find a better address. Butler Decl., at ¶9.

## EXCLUSIONS AND OBJECTIONS

As of this date, Simpluris received 4 requests for exclusion from the Settlement from Ronald S. Stachewicz, Weston A. Acosta, Ketsada Narong, and Jannromeo M. Zaragoza.  Butler Decl., at ¶10.  As of this date, Simpluris has not received any objections. Butler Decl., at ¶11.

## BREAKDOWN OF SETTLEMENT FUND

As of this date, there are 2,272 Participating Class Members who will be paid their portion of the Net Settlement Amount, estimated to be approximately The Net Settlement Amount available to pay Participating Class Members was determined as follows:

| | |
|---|---|
| **Gross Settlement Fund:** | **$1,800,000.00** |

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

| | |
|---|---|
| Less Attorneys' Fees | -$450,000.00 |
| Less Litigation Costs | -$15,000.00 |
| Less Settlement Administration | -$21,359.00 |
| Less Plaintiff Service Awards | -$10,000.00 |
| Less PAGA Penalties | -$15,000.00 |
| **NET SETTLEMENT FUND** | **$1,288,641.00** |

As of this date, the *highest* Settlement Share to be paid is approximately $1,098.75 and the *average* Settlement Share to be paid is approximately $566.19, and the *low* Settlement Share to be paid is approximately $0.54. These amounts are not final since timely responses can be received several days after the May 28, 2022 postmark deadline.   Butler Decl., at ¶12.

## NOTICE TO ATTORNEY GENERALS PURSUANT TO CAFA

Simpluris was separately retained by Defendants to administer the notice mandated under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, to the U.S. Attorney General and to the Attorney Generals of all states and territories where class members reside. Simpluris mailed the notice to these persons on December 30, 2021. A true and correct copy of the notice is attached hereto as Exhibit B (exhibits to the notice are omitted). Butler Decl., at ¶13.

## ADMINISTRATION COSTS

Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, are $21,359.00. Simpluris' work in connection with this matter will continue with the calculation of the Settlement checks, issuance and mailing of those Settlement checks, etc., and to do the necessary tax reporting on such payments. Butler Decl., at ¶14.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

## VII.   THE INCENTIVE, ATTORNEY'S FEES AND COSTS ARE REASONABLE

The proposed incentive payment to Plaintiff of $10,000 is also reasonable given the benefits of the settlement and Mr. Diaz's contributions as the lone class representative. See Declaration of Jose Diaz.

Federal Rule of Civil Procedure 23(h) provides that, [i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.  "Attorney's fees provisions included in a proposed class action agreement are, like every other aspect of such agreement, subject to a determination whether the settlement is "fundamentally fair, adequate and reasonable." ***Staton v. Boeng Co***. 327 F.3d 938, 964 (9th Cir. 2003).

In "common fund" cases, a "litigant or a lawyer who recovers a common for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. ***Id***.,, at 967 (*quoting ***Boeing Co. v. Van Gemert*** 444 US 472, 478 (1980).  To determine the amount of the attorney's fees to be drawn from the fund, the district court may utilize the "percentage method," which awards the attorneys a percentage of the fund.  ***Id.***   The 9th Circuit's "benchmark" for attorney's fees in common fund class action is 25% of the common fund.   Selection of the benchmark, however, must be supported by findings that take into account all of the circumstances of the case.  See ***Vizcaino v. Microsoft Corp.***, 290 F.3d 1043, 1048 (9th Cir. 2002). Circumstances include (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is at or above the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) a loadstar cross-check; and (7) reactions from the class. Id., at 1048-1052.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

Here, Plaintiff's counsel took this case on a contingency, with all the associated risk that it entails, and an obligation to advance, at his own risk, the costs for the case.  Plaintiff's Counsel's request for attorney's fees not to exceed $450,000 (25% of gross settlement) for all past and future attorney's fees necessary to prosecute, settle, and administer the litigation and this proposed Settlement, and for verified litigation costs not to exceed $13,953.  See Buchsbaum Decl., at ¶55. *See **In re Bluetooth Headset Prods. Liab. Litig.*** 654 F.3d 935, 942.  (in the Ninth Circuit, a 25% award is the "benchmark" attorneys' fee award).  The 25% is also supported by plaintiff's counsel's loadstar, with a multiplier for contingent risk.  See Buchsbaum Decl. ¶56-60.  The 25% is at or below the going rate in Los Angeles County for contingency wage and hour cases, and the results to the class, which include over $550 for each class member, and no objections to the settlement, warrant the 25% benchmark fee as well. Plaintiff's counsel is also seeking reimbursement for verified and necessary costs amounting to $13,953, which include the mediation fee ($10,000), the complex filing and serve costs ($1.550), Expert Consulting Fees ($1725) and the remainder in miscellaneous filings and copying.  The total costs are under the $15,000 that was estimated in the Class Notice. $455 in additional filing and copying costs. See Buchsbaum Declaration at ¶51.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

# VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of this class, collective, and representative action settlement.

Dated: June 29, 2022                LAW OFFICES OF BUCHSBAUM & HAAG
                                    A Limited Liability Partnership


                                    By: _____*/s/ Brent S. Buchsbaum*_____
                                    Brent Buchsbaum, Attorney for Plaintiff

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT